THE STATE EX REL. JOHN M. DAWSON v. W. W. CASTER, Clerk of County Court of Gentry County, and CHARLES U. BECKER, Secretary of State.

Court en Banc, January 5, 1929.

PER CURIAM:—This is an original proceeding by mandamus to compel the making by respondent Caster of certain certificates in respect to the result in Gentry County of the general election held November 6, 1928, and to compel respondent Becker to receive such certificates and to cast up the vote for the office here involved in accordance therewith.

In the original petition our writ was asked for only against respondent Caster. Upon motion of the relator, an amended petition was filed and respondent Becker was made a party respondent. Both respondents have filed returns.

The substance of the allegations of relator's amended petition for our alternative writ is as follows:

Relator possesses all of the qualifications of a circuit judge, under the Constitution and laws of this State, and at the November, 1928, election was the regularly nominated candidate on the Democratic ticket for the office of Judge of the Fourth Judicial Circuit of Missouri. Dorus D. Reeves was the regularly nominated candidate for said office on the Republican ticket.

Gentry County is one of the counties comprising said Fourth Judicial Circuit and Alanthus precinct of Wilson Township was one of the regularly established election precincts of said county. According to the reading of the ballots by the judges of election and the tally and count thereof made by the clerks of said precinct, relator received therein 127 votes and said Reeves 143 votes for said office, and the tally list so showing was duly certified as correct by the judges and clerks of said election precinct. In setting down the number of votes cast for the several candidates at the foot of the poll book in said precinct, the total vote of relator was set down as 127, and of said Reeves as 148. This was followed by the final certificate of correctness signed by the judges and clerks of election and the poll book was returned in that form to respondent Caster.

Siloam precinct of Howard Township was one of the regularly established election precincts of said Gentry County. According

to the reading of the ballots by the judges and the tally and count thereof made by the clerks of election of said precinct, relator received sixty-four votes, and said Reeves received thirty-three votes for said office and the tally list so showing was certified as correct by the judges and clerks of said election precinct.

David School House precinct, in Huggins Township, was one of the regularly established election precincts of Gentry County at said election. According to the reading of the ballots by the judges and the tally and count thereof made by the clerks of the election of said precinct, relator received ninety-eight votes for said office and said Reeves received 105 votes for said office, and the tally list so showing was certified as correct by the judges and clerks of said election precinct.

The judges and clerks of election of each of said precincts of Siloam and David School House signed the final certificates, provided for that purpose at the foot of their respective poll books, and failed to fill in the number of votes relator and said Reeves received in said precincts for the office of Judge of the Fourth Judicial Circuit.

By reason of the foregoing facts, relator claims that he sustained a net loss of twenty-nine votes and, if that number of votes be added to those to which he is shown to be entitled in the remaining precincts of the Fourth Judicial Circuit, he will be entitled to the certificate of election as such judge.

We quote from said petition, as follows:

"That thereafter it became and was the duty of the said W. W. Caster as Clerk of the County Court of said Gentry County, within seven days after said election, held on said 6th day of November, 1928, to transmit to the Secretary of State of the State of Missouri, a fair abstract of the votes given in said county, including said precincts of Alanthus, Siloam and David School House, for the office of Judge of the Circuit Court as aforesaid, but the said W. W. Caster, as such clerk of said County Court, arbitrarily, wilfully, wrongfully and unlawfully and for the purpose and design of cheating and defrauding this relator out of said office, has failed and refused to certify to said Secretary of State the correct vote as returned to him by the judges and clerks of said voting precincts as aforesaid; that Dorus D. Reeves received for said office of Circuit Judge at said Alanthus precinct one hundred and forty-three votes, but the said W. W. Caster, as County Clerk, arbitrarily, wrongfully, wilfully, fraudulently and unlawfully and for the purpose of cheating this relator out of the office of Circuit Judge, certified to said Secretary of State, that the said Dorus D. Reeves received one hundred and forty-eight votes in said Alanthus Precinct; and in furtherance of said design and purpose the said W. W. Caster, as Clerk of the County Court of Gentry County to so cheat and defraud this rela-

tor out of the office of Circuit Judge, as aforesaid, did arbitrarily, unlawfully, wrongfully, fraudulently and wilfully, fail and refuse to certify to said Secretary of State the fact as shown by the returns of said election, that this relator received for the office of Circuit Judge sixty-four votes at said Siloam Precinct and ninety-eight votes at said David School House Precinct and that the said Dorus D. Reeves received thirty-three votes at said Siloam Precinct and one hundred and five votes at said David School House Precinct.''

The reason why respondent Caster has refused to certify to the Secretary of State the votes cast for the candidates for the office of judge of the Fourth Judicial Circuit and all other offices voted for in said precincts of Siloam and David School House is alleged by relator to be the neglect of the judges and clerks of said election precincts to recopy in the additional blanks at the end of the poll books the total of the votes cast by the voters of said precincts as shown on the respective tally sheets.

Relator alleges that he made demand on respondent Caster to certify to the Secretary of State what relator contends to be the true and correct vote of said precincts of Alanthus, Siloam and David School House, as shown by the tally sheets in the respective precincts.

It is then alleged that respondent ''Charles U. Becker is now the duly qualified and acting Secretary of State and that as such Secretary of State has received the erroneous certificate of the Clerk of Gentry County Court and is proceeding to and will cast up the votes as so certified to him and will award the certificate to the said Dorus D. Reeves as Judge of the Fourth Judicial Circuit on the assumption that the said vote has been correctly certified and that the said Dorus D. Reeves has been duly elected to said office unless made a party to this suit and the further proceedings restrained until the proper and correct vote can be certified up by the said Clerk of the County Court of Gentry County, Missouri.''

The prayer of relator's said amended petition is that this court ''award and issue against the said W. W. Caster, Clerk of the County Court of Gentry County, Missouri, and Charles U. Becker, Secretary of State of the State of Missouri, a writ of mandamus commanding and requiring the said W. W. Caster to certify to the Secretary of State of Missouri, the vote of Dorus D. Reeves for Circuit Judge in said Alanthus precinct in said Gentry County, as one hundred and forty-three votes for said Reeves, as shown by the tallies on the tally sheet part of the poll book, certified to him by the said judges and clerks of said election in said Alanthus precinct; that the said W. W. Caster be required to certify to the Secretary of State, the correct vote for this relator and the said Dorus D. Reeves, for the office of Circuit Judge, as shown by the poll books and the tally sheet portion thereof, as returned by the judges and clerks of said election from Siloam and David School House precincts

in said Gentry County to the said W. W. Caster, County Clerk as aforesaid; that is to say, from Siloam precinct sixty-four votes for relator and thirty-three votes for the said Dorus D. Reeves, and from David School House precinct ninety-eight votes for relator and one hundred and five votes for the said Dorus D. Reeves, and that the said Charles U. Becker, Secretary of State, be required to cast up the vote of relator and the said Dorus D. Reeves in accordance with such amended and corrected abstract of the vote of Gentry County, Missouri, as required to be sent up by the said W. W. Caster, Clerk of the County Court, and that he be required to issue a certificate to this relator in accordance with the vote as shown by such amended abstract and that he be restrained from proceeding further until such corrected abstract of the votes of Gentry County can be certified up by the said W. W. Caster, Clerk of the County Court of Gentry County.''

To his petition for our writ relator attached copies of the poll books, including tally sheets, in each of the three precincts aforementioned, which poll books have been duly certified by respondent Caster in his official capacity as Clerk of the County Court of Gentry County.

Respondent Becker has filed his return to the said amended alternative writ and demurred thereto, on the ground that the petition and writ do not state facts sufficient to constitute a cause of action against said respondent in favor of relator and that such facts are not sufficient to authorize the issuance of a writ of mandamus as prayed. Accordingly, he prayed that our alternative writ be quashed.

Respondent Caster has filed his return, denying each and every allegation of the petition, which is included in the amended alternative writ of mandamus, to the effect that the poll books showed the votes for relator and said Reeves as candidates for said office as set forth in said petition and affirmed the correctness of his abstract of the votes of Gentry County in respect to Alanthus precinct and alleged that the judges and clerks of Siloam and David School House precincts failed to certify the total number of votes received by relator and said Reeves for said office.

Respondent Caster denied that he and two justices of the peace, called in by him, determined that votes were cast for relator and said Reeves in Siloam and David School House precincts, as charged in said petition, and alleged that no such determination was made and that he had no evidence before him by which he could have made such determination.

He denied that he ''arbitrarily, wrongfully, wilfully, fraudulently and unlawfully and for the purpose of cheating this relator out of the office of Circuit Judge'' made the certificate to the Secretary of State showing the vote in said precincts which he contends the

poll books legally and properly show. He also denied that relator made demand upon him to certify to the Secretary of State the true and correct vote of said precincts and alleged the fact to be that relator demanded that respondent certify the vote of said precincts for said office as shown by the tally sheets.

Among other allegations of the respondent Caster's return, it is alleged that relator received more votes in the Second Gentry precinct in Bogle Township in said county, as shown by the official certificate of the judges and clerks of election at the foot of the poll book, than the tally sheet showed him entitled to.

Respondent Caster also alleged certain facts which he contends rendered void all of the absentee votes sent to the four counties comprising the Fourth Judicial Circuit and alleges "that by reason of the premises and by reason of said absentee votes being void this respondent says that the writ herein would be unavailing to the relator and would accomplish him nothing if it were awarded, for the reason that his opponent D. D. Reeves would still have a majority of forty-one votes upon the face of the said fair abstract of votes so certified to Secretary of State, if so amended as prayed for in relator's petition and as directed in said alternative writ issued herein."

Numerous other allegations are made in the return of respondent Caster, which it is unnecessary to notice at this time. Also, in his return, respondent Caster urges many purported legal reasons why our alternative writ should not issue. These also need not now be noticed.

When our alternative writ was ordered issued, a single legal question appeared to be involved, to-wit, whether, in making up his abstract of the votes of Gentry County, respondent Caster should base the same on the tally and count made by the judges and clerks of election in the three election precincts named in the petition or should base the same on the final certificates of the judges and clerks appearing at the foot of the poll books and in the absence of such final certificates, should not canvass and count votes in such precincts for either candidate.

Such, apparently, was the only issue properly to be made which could be tried before this court in the mandamus proceeding. Respondent Caster has attempted to bring in issues as to matters not germane to such issues. While contending that our alternative writ should not have been issued in the first instance and that it should now be quashed, said respondent has sought to enlarge the issues raised by the petition by alleging in his return facts clearly irrelevant to the issues properly triable under the allegations of the petition and our alternative writ. In other words, he apparently seeks to convert our mandamus proceeding into an election contest and therein and thereby to try all of the questions which could be

considered in an election contest, to-wit, which candidate received the highest number of legal votes for the office of Judge of the Fourth Judicial Circuit.

Relator seems to have acquiesced in the effort of respondent Caster to make of this proceeding an election contest, for, on December 28, 1928, his counsel and counsel for respondent Becker and for respondent Caster filed in this court for our approval the following stipulation:

''It is stipulated and agreed between the relator and the respondents that in view of the inability of the parties to agree upon the facts in the case, the said parties join in a request 'to the court forthwith to appoint a commissioner empowered to take the evidence, to make findings of fact, and report the same to this court.''

Such stipulation was unnecessary, in so far as the issues raised by relator's amended petition and our alternative writ are concerned, because we already have in our files certified copies of the poll books, including the tally sheets in each of the precincts of Alanthus, Siloam and David School House in Gentry County, and their correctness has not been challenged. It only remained to determine as a matter of law whether mandamus is the remedy properly available to relator, under the circumstances, and, if so, whether the vote as recorded on the tally sheets should control the certificate of respondent Caster to respondent Becker, rather than the final certificate or want of certificate at the foot of the poll book.

Had we known that issues such as the alleged discrepancy between the vote of relator, shown by the certificate at the foot of the poll book and the certified tally list in the Second precinct of Gentry, and the challenge as to the validity of the absentee votes in the four counties of the Fourth Judicial Circuit might also be raised in the proceeding, we would have exercised our discretion by refusing to issue the alternative writ.

The issuance of such a writ is not a matter of right, but is highly discretionary with the court whose powers in that respect are invoked. [38 C. J. 546, sec. 16; State ex rel. Hyde v. Jackson County Medical Society, 295 Mo. 144, 243 S. W. 341; State ex rel. Brown v. McIntosh, 205 Mo. l. c. 634, 103 S. W. 1071; State ex rel. City of Centralia v. Wilder, 211 Mo. l. c. 319, 109 S. W. 574; State ex rel. Crow v. Bridge Company, 206 Mo. l. c. 137, 103 S. W. 1052.]

It cannot be doubted that it is equally within the sound discretion of the court, of its own motion, to dismiss and discontinue a mandamus proceeding when issues and considerations appear which would have caused a denial of the alternative writ had their existence been known when such writ was applied for. It has become clear to the court that the parties to this proceeding are endeavoring to make of it an election contest in the face of the statute confiding the jurisdiction in such cases to the circuit court. [Sec. 4929, R. S. 1919.]

All that could have been properly accomplished under our alternative writ would have been a determination as to which certificate in the poll books should guide the county clerk in making up his fair abstract of the votes in his county for certification to the Secretary of State. Incidentally, our decision on that question, because of the closeness of the votes, might have determined to which candidate the Secretary of State would issue the certificate of election. This automatically would have made the certificate holder the contestee, if an election contest thereafter should be filed.

Our decision upon the question of which certificate the county clerk should use in making up his abstract could in no sense determine the actual facts concerning the correctness of the vote shown by such certificate. That is an inquiry peculiarly appropriate to an election contest. In that proceeding the circuit court may go behind any and all certificates of the election officials and open the ballot boxes and recount the ballots themselves and declare the result accordingly.

Could this court have been permitted promptly to settle the legal question involved in the amended petition, our alternative writ would not have been abused, a certificate of election could have issued without undue delay and then, if so advised, the candidate denied such certificate could have taken whatever steps he deemed advisable. But the appointment of a commissioner would mean a long drawn out controversy in this court with the same ultimate effect of our final decision, to-wit, the determination as to which candidate should receive the certificate of election. Such determination would not prevent an election contest, if the losing party could, or decided to, institute an election contest thereafter.

We decline to permit our alternative writ of mandamus to be used in that manner. The stipulation for the appointment of a commissioner is disallowed and our alternative writ of mandamus is quashed of our own motion without prejudice to any of the questions raised thereby. All concur.